(93 Misc. Rep. 213)

DE HART et al. v. ENRIGHT et al.

(Supreme Court, Equity Term, Cattaraugus County. January, 1916.)

1. FRAUDS, STATUTE OF ⊜⟶158—MEMORANDUM OF LEASE—EVIDENCE—STATUTE.

Evidence in an action to enjoin defendants from drilling oil wells, etc., on the ground that plaintiffs were entitled to a decree that the facts and circumstances of the case constituted in law and equity an executed oil lease to them of part of the tract, securing to them the paramount and exclusive right to operate it for oil purposes on royalty, and that the defendants were entitled merely to the royalty, *held* not to show any contract, note, or memorandum thereof expressing the consideration in writing, subscribed by the lessor as required by Real Property Law (Consol. Laws, c. 50) § 259, requiring such memorandum, etc., of leases of realty for more than one year.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 373–376; Dec. Dig. ⊜⟶158.]

2. FRAUDS, STATUTE OF ⊜⟶58—LEASE—MEMORANDUM—STATUTE.

While the right to operate for oil under a lease, contract, or other writing or license is deemed personal property by virtue of General Construction Law (Consol. Laws, c. 22) § 39, yet the perpetual exclusive right to operate lands other than those occupied cannot be created, except as provided by Real Property Law, § 259, making a contract for leasing for longer than one year void, unless it, or some memorandum thereof expressing the consideration, is in writing, subscribed by the lessor.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 90, 91; Dec. Dig. ⊜⟶58.]

3. MINES AND MINERALS ⊜⟶52—LEASE—LIMITATIONS.

Where plaintiffs' predecessors, under an agreement by the owner to lease land at one-eighth royalty on condition that the lessees should drill oil wells thereon, and that in case of successful wells the lessees should have 50 more acres on same terms and the first chance to lease the balance of the property, drilled four wells, and their ownership thereof and right to operate them were acquiesced in by the owner for more than 25 years, such acts would be deemed to have been in performance of some contract therefor, and their possession and continued operation of the wells, with exclusive possession of the land within a radius of 200 feet from each well, would not be disturbed.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 142–146; Dec. Dig. ⊜⟶52.]

4. COSTS ⊜⟶32—PREVAILING PARTY.

In an action to enjoin defendants from drilling oil wells, and to establish plaintiffs' right to the exclusive operation of part of a tract in possession of defendants, where plaintiffs failed in their claim to the ownership of oil wells driven by defendants, and defendants failed in their claim to superior rights in all the land, costs would not be awarded.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. ⊜⟶32.]

---

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Mary De Hart and others against Frank N. Enright and others, to enjoin the drilling of oil wells, etc. Complaint dismissed.

Allen J. Hastings, of Olean, for plaintiffs.
George W. Cole, of Salamanca, for defendants Enright.
John B. Richards, of Buffalo, for defendant Forman.

BROWN, J. On September 21, 1889, defendant George V. Forman was the owner of a tract of land on lot 46, town of Carrollton, Cattaraugus county, 25 chains wide north and south, 100 chains long east and west, containing 250 acres, bounded on the south by the state line, and was also the owner of 19 acres on the north, 10 chains wide east and west, and 19 chains long north and south, the east boundary being a continuation of the east boundary of the 250-acre tract, all of which real estate was known as the William Beardsley farm, a wild, unimproved, and unoccupied tract of land. On that day Mr. Forman signed and delivered to J. M. Shearon and Charles De Hart a paper reading:

"Olean, N. Y., Sept. 21, 1889.

"I hereby agree to lease 50 acres of land at one-eighth (⅛) royalty on the west of the William Beardsley farm near state line, either north or south of said line, from the tracts of land I own, to J. M. Shearon and Charles De Hart, on condition that they will commence and drill an oil well thereon. In case they are successful in obtaining oil, they shall have 50 acres more on same terms. The rig for said well to be built within 30 days, and the well to be put down as soon as practical; otherwise, this agreement to be utterly null and void.                    George V. Forman.

"In case said parties should obtain paying wells, and the balance of the property should prove to be valuable, I agree to let them have the first chance to lease the same at its value.                    George V. Forman."

Shearon and De Hart drilled an oil well on the extreme east end of the 250-acre tract and about 17 chains north of the state line during the fall of 1889, finding oil in paying quantities. In 1891 Shearon and De Hart assigned a one-quarter interest in the above-mentioned agreement or option for a lease to one John Denman, together with a like interest in an oil well and its fixtures, etc., "now on said lands and belonging thereto"; and on June 19, 1891, John M. Shearon assigned a one-quarter interest in the above-mentioned agreement or option for a lease to the said John Denman, together with a like interest in the oil well and fixtures "thereon situate."

In 1891 Shearon and De Hart assigned a one-quarter interest in the Forman paper of September 21, 1889, to Ferdinand Kreiner, together with one oil well and its fixtures "on said land and belonging thereto"; and on March 20, 1892, the said Kreiner assigned to J. W. and T. E. McCray one-quarter of the leasehold estate created by the above-mentioned Forman paper of September 21, 1889, together with a like interest in an oil well thereon and a certain additional well that had been drilled by Shearon, De Hart, and Kreiner on such leasehold. This last-mentioned well had been drilled on the easterly end of the 250-acre tract, about 12 chains north of the state line, and about 25 chains west of the east end of the tract. These two oil wells were of small production, yet were paying wells; one-eighth of the oil from

each of them being run into the pipe line to the credit of Mr. Forman as royalty.

In this condition of the title, De Hart, Denman, and the McCrays were in possession and claimed to own two oil wells located on the east end of the 250-acre tract under an agreement by Mr. Forman to lease 50 acres off the west end of the tract at one-eighth royalty. Such was the situation in June, 1894, when John Denman interviewed Mr. Forman upon the subject of the giving of an oil lease as provided in the paper of September 21, 1889. Mr. Forman stated to Denman that the lessees could have all the time they wanted to drill another well or two. After the interview Mr. Forman had prepared a lease, which was dated back to July 10, 1890, of 75 acres of the east end of the 250 acres and the 19 acres located to the north and east thereof to Denman, De Hart, and McCray Bros. for oil operations, to drill for and gather all oil, etc., for 25 years from July 10, 1890, at one-eighth royalty, providing for the drilling of four wells a year. In case, however, the lessees should drill only one or two or more wells, and operations be suspended, then there should be set apart 10 acres next to and adjoining each well drilled for the lessees, and the balance of the lease should revert to the lessor. This proposed lease was never signed by Mr. Forman. He mailed it to Denman in Ohio, accompanied by a letter dated June 14, 1894, in which he stated that the forfeiture would not be insisted upon, using the following language:

"You need not feel anxious about further drilling, unless you have ample notice from me."

Mr. Forman also stated in the letter:

"I send you herewith the lease in duplicate spoken of when here. * * * I would like you to return me the original memorandum for this lease, given to De Hart & Shearon; inasmuch as the lease itself is made to a different party, it is proper I should have it surrendered."

It is very evident from the foregoing letter that the proposed lease accompanying it was not to be signed by Mr. Forman until the letter or paper of September 21, 1889, was returned to him. Upon receipt of the proposed lease and accompanying letter by Denman, Denman signed his name in the appropriate place as one or the lessees and mailed the proposed lease to the McCrays at Bradford, Pa., who evidently placed the same among their private papers and it was not discovered until after this action was commenced in 1914. It is not known whether Charles De Hart ever saw the proposed lease, and it is not known whether De Hart, Denman, and the McCrays drilled any oil wells, relying upon or depending upon the proposed lease being actually signed in the future by Mr. Forman. De Hart, Denman, and the McCrays did drill two additional oil wells upon the 250-acre tract, each about 150 feet from the east boundary, one about 7 chains and one about 10 chains north of the south boundary. The fact that Denman testifies that Mr. Forman told him in 1894 that "we would have all the time we wanted to drill another well or two, and we drilled another well or two," is accepted as proof that these two additional wells were

drilled after the letter of June 14, 1894, and the proposed lease was sent to Mr. Denman by Mr. Forman.

From the date of the completion of the two additional oil wells in about 1895, no other wells were drilled by De Hart, Denman, and the McCrays, and no attempts were made by them to operate any portion of the premises for oil purposes, for nearly 20 years, and no notice was ever given by Mr. Forman requiring further drilling. De Hart, Denman, and the McCrays, or their successors in interest, the plaintiffs herein, however, have continuously operated the four oil wells, delivered one-eighth of all oil produced therefrom to Mr. Forman, and have been in the possession of such four oil wells up to the present time.

In 1904 Mr. Forman executed and delivered to Hooker Bros. an oil lease of the 19 acres described in the proposed lease above referred to, such lessees drilling two oil wells thereon more than 10 years ago without any objection on the part of De Hart, Denman, and the McCrays; and on April 4, 1911, the defendants purchased the lease and the two oil wells of Hooker Bros. On June 22, 1911, Mr. Forman conveyed by quitclaim deed to the defendants "all the crude oil, petroleum, gas, mineral, and other rights that I possess in or under the surface of" the 250 and 19 acre tracts above referred to, "subject to any lease for oil and gas purposes heretofore made by the said George V. Forman covering any portion of the said above described premises." At the time of and prior to this last-mentioned conveyance the bookkeeper of Mr. Forman exhibited to the defendants a book, kept by him relative to the 250-acre tract, wherein it was written:

"East 75 acres of above tract leased to De Hart & S., from which G. V. F. receives a royalty of one-eighth."

The said bookkeeper stated to the defendants that there could be no lease found executed to the plaintiffs or their predecessors in interest, and there was no such lease on record. Thereafter the defendants called upon the plaintiff De Hart, inquired as to what rights the plaintiffs had to operate their four oil wells for oil and was shown a copy of the paper of September 21, 1889, and told that the plaintiffs claimed under it. Thereafter, and on or about April, 1913, the defendants located and drilled an oil well 384 feet to the east of the first well drilled by the plaintiffs' predecessors in interest, and commenced the drilling of a second well more than 400 feet to the northeast of the said first well drilled by plaintiffs' predecessors in interest, when the plaintiffs commenced this action, alleging that upon execution and delivery of the paper of September 21, 1889, the said Shearon and De Hart entered upon the premises therein described and drilled two oil wells, complying with the conditions of such paper, in good faith believing that Mr. Forman would execute a formal oil lease of the 100 acres to them, that the said Forman refused to make such lease, that the defendants purchased such oil rights with full knowledge of plaintiffs' rights, had been forbidden to drill for oil on said premises, and demanded judgment that plaintiffs be adjudged to be the owners of the oil right in the 100 acres, that defendant Forman be compelled to exe-

cute an oil lease to them of 100 acres, and that defendants be restrained from further operations for oil on said premises.

After the defendants had answered, denying that plaintiffs acquired any rights under the paper of September 21, 1889, to the premises on which the four oil wells drilled by plaintiffs' predecessors in interest were located, the plaintiffs evidently then discovered the existence of the proposed lease of June 14, 1894, for they later procured an order permitting an amendment of the complaint, alleging as a second cause of action the execution and delivery by defendant Forman to Denman, De Hart, and the McCrays of an oil lease of said premises at one-eighth royalty which was intended by said Forman to be performance of the said agreement of September 21, 1889, and that plaintiffs and their predecessors in interest had been in open possession of said premises, producing oil therefrom, and delivering royalty thereof to defendants.

The contention of the plaintiffs is that they are entitled to a judgment decreeing that the facts and circumstances of the case constitute in law and in equity an executed oil lease to them of the east 75 acres of the 250-acre tract, securing to them the paramount and exclusive right to operate the same for oil purposes at one-eighth royalty; that the defendants are entitled simply to such royalty; that the drilling of the four oil wells by plaintiffs' predecessors in interest secured the exclusive right to occupy, not only sufficient land surrounding each well to reasonably operate the well, but also the right to all of the 75 acres.

[1] It is quite satisfactory to be able to reach a conclusion that the plaintiffs are rightfully and equitably entitled to the four oil wells they possess and operate, together with the exclusive possession of the adjacent land thereto within a radius of 200 feet, restricting their future operations to the oil wells already drilled. Performance of any kind of a contract that can be spelled out of all the facts will give them those wells. It is a far different matter, however, to undertake to work out a theory which will be in harmony with law and equity, whereby plaintiffs can be awarded possession of the oil wells drilled by the defendants, as well as possession of the entire east 75 acres of the 250-acre tract. The objections to such a theory cannot be overcome. The paper of September 21, 1889, has no reference whatever to the east 75 acres of the 250-acre tract; it refers solely to the west 50 acres; there never was a well drilled on the west 50 acres, so as to entitle the holders of the paper to a second 50 acres. If it was intended that the proposed lease of June 14, 1894, was to be in fulfillment of the option of September 21, 1889, that intention was rendered ineffectual by the fact that the proposed lease was never signed by the owner of the fee.

To hold that an oil lease can be adjudged to have been executed, so as to create an exclusive, permanent, and definite tenure of lands beyond the narrow limits of actual occupation and possession, without actual signing, would be to ignore the plain provisions of the Real Property Law applicable to such instruments. Section 259 of that law provides that a contract for the leasing for a longer period

than one year of any real property is void unless the contract or some note or memorandum thereof expressing the consideration is in writing, subscribed by the lessor. There has been no proof offered of any compliance with the requirements of this provision. Whatever writing, subscribed by defendant Forman, there has been produced has reference to lands more than one-half mile to the west of the lands in controversy. If it be claimed that the letter of September 21, 1889, the letter of June 14, 1894, the proposed lease accompanying the last-mentioned letter, the drilling of the four wells upon the east end of the 250-acre tract, the acceptance of the one-eighth royalty by Mr. Forman from the four oil wells, the entry in the books of Mr. Forman, in about 1910, that the east 75 acres of the 250-acre tract had been leased to De Hart and Shearon, constitutes an executed oil lease for the 75 acres, providing that the drilling of one or four oil wells thereon shall hold and effectually tie up the whole 75 acres, the answer is that there has been no proof whatever of such an important and vital provision.

Whatever proof there is upon the subject of how much land can be claimed by the drilling of each well is limited to the provision in the proposed lease that each well shall hold ten acres. Even that provision was not known to any party to this action until the summer of 1915, years after the leasing by Mr. Forman to Hooker Bros. of the 19 acres, and some time after the defendants had drilled their wells that the plaintiffs now claim to own. If it be said that the exhibiting to the defendants, before their purchase, of the entry in Mr. Forman's book that the east 75 acres of the 250-acre tract had been leased to De Hart and Shearon was notice to defendants that there was then in existence a valid lease securing the whole 75 acres, the answer is that there was no such lease in existence. The entry in Mr. Forman's book had reference to transactions in 1889 to 1894. For 17 years there had been no further operations for oil, except the pumping of the four wells. No attempt had been made to further drill the property. The plaintiffs had acquiesced in the right of Mr. Forman to lease to Hooker Bros. the 19 acres, a part of the lands described in the proposed lease. Such acquiescence by the plaintiffs in 1904 in the assumption by Mr. Forman of the right to lease the 19 acres is some evidence that they recognized his right to convey the oil right in the balance of the 94 acres, excepting what land was reasonably needed for the operation of the four oil wells, and is some evidence of the abandonment by the plaintiffs of all claim thereto under the paper of September 21, 1889, or the transactions which they now claim constitute an executed lease of the 75 acres.

[2] While it is true that the right to operate for oil under a lease, contract, or other right or license to operate for oil shall be deemed personal property by virtue of section 39 of the General Construction Law, yet it has never been held that the perpetual, exclusive right to operate lands other than those occupied could be created, except as provided by section 259 of the Real Property Law. The drilling of the four oil wells did not create the right to exclusively possess the entire 50, 75, 94, or 100 acres of the Beardsley farm, whichever of these

parcels plaintiffs may claim. There has been proved no contract to this effect. In the absence of proof of the creation of the right to operate the entire tract of 75 acres in accordance with the requirements of section 259 of the Real Property Law, the finding must be that the plaintiffs are not the owners of the oil wells drilled by the defendants, and are not entitled to possess the entire 75 acres and to restrain defendants from operating thereon.

[3] While the statute of limitations has run against the claim for a specific performance of an alleged contract to lease, founded upon the paper of September 21, 1889, and all the facts and circumstances established, yet it can equitably and reasonably be held that the plaintiffs should be permitted to continue the operation of the four oil wells drilled by them, retain what oil they will produce, less one-eighth thereof as royalty to the defendants, exclusively possessing for such purpose all the land within a radius of 200 feet from each well; that such operation of such oil wells continue by plaintiffs as long as oil is produced in paying quantities, and be limited to the four oil wells already drilled; that upon abandonment of such oil operations the plaintiffs be permitted to remove their fixtures and appurtenances, and for the purpose of such operation and removal plaintiffs have ingress to and egress from said premises. The plaintiffs having drilled these four wells, their ownership of the same and the right to operate having been acquiesced in by the owner of the fee for more than 25 years, their acts must be deemed to have been in performance of some contract therefor, and their possession thereof will not be disturbed.

[4] The plaintiffs failing to establish title to the right to exclusively operate any of the 250-acre tract in the possession of the defendants, and failing in their claim to the ownership of the oil wells drilled by the defendants, would be subject to costs of this action, were it not for the fact that the defendants in their answer denied plaintiffs' right to the four wells and demanded judgment that the defendants' rights in all the lands in controversy were superior to those of the plaintiffs. Neither party succeeding upon the issues raised by the pleadings, costs are not awarded.

The complaint will be dismissed as against defendant Forman, without costs.          ⊛